SADLER, J., dissenting.
 

 {¶ 41} Because I believe the trial court did not err when it determined that the good-faith exception to the exclusionary rule applied and denied appellant's motion to suppress, I respectfully dissent.
 

 {¶ 42} In this appeal, appellee argues that Detective Wuertz's affidavit, as supplemented by his testimony at the suppression hearing, establishes the required nexus between appellant's home and a crime against E.S.
 
 [3]
 
 I agree.
 

 {¶ 43} At the suppression hearing in this case, Detective Wuertz gave the following testimony:
 

 [Prosecutor:] Did she [E.S.] indicate any other activity, either photographs or touching or otherwise?
 

 A. She did. She relayed that she felt kind of strange. There were times that [appellant] took pictures of them in kind of-she described them as unitard suits in order for costumes for plays and that in describing those she said he would have them specific instructions to wear nothing underneath these unitard suits, and he would then take pictures of them wearing these unitard suits in some way to aid in the creation of costumes for them.
 

 [Prosecutor:] And these unitards, they were somewhat see-through, you indicated?
 

 A. Correct. She described them as practically see-through, if not see-through.
 

 * * *
 

 [Prosecutor:] Okay. Do you recall what else you told her [Judge Peeples], whether it be in answer to a question or other testimony?
 

 A. I believe I went back to a little more detail about how the relationship with these girls was started in 7th grade, how they were cultivated to the point to where they were.
 

 I told her about the photographs of the unitards and the see-through unitards that they felt uncomfortable about, some just different things to give her a little bit more background than what was actually typed in the search warrant.
 

 I believe in that I said due to the possible see-through of the unitards I was very concerned about where those photos were and what exactly those were being used for.
 

 (June 29, 2010 Tr. at 27, 34.)
 

 {¶ 44} In the decision on appellant's motion to suppress, the trial court found that Detective Wuertz's affidavit "discusses two similar situations of deviant behavior and connects aspects of that behavior to the location specified in the warrant." (Aug. 16, 2016 Decision at 2.) The trial court also noted that "[t]he officer discussed events involving a camera used to take illicit photos of the minor victim and a similar course of conduct with the victim E.K."
 
 [4]
 
 (Aug. 16, 2016 Decision at 2.) There is no question that the affidavit states that appellant had sexual contact with both E.K. and E.S. The affidavit connects appellant's sexual contact with E.K. to appellant's home because the affidavit states that appellant took digital photographs of E.K. However, the affidavit does not state appellant took digital photographs of victim E.S. Thus, the trial court's findings evidence consideration of Detective Wuertz's sworn, but unrecorded, testimony before the issuing judge.
 

 {¶ 45} After the remand order issued by this court in
 
 Dibble III
 
 , the state filed a motion for reconsideration wherein the state argued that our decision erroneously limited the trial court's review, on remand,
 to the four corners of the affidavit. In overruling the motion, this court stated: "This court did not provide any instruction to the trial court regarding the evidence that it should or should not consider in making its determination whether Detective Wuertz conducted the search in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate."
 
 Dibble IV
 
 at ¶ 11.
 
 [5]
 

 {¶ 46} The majority notes that Civ.R. 41(C)(2) confines trial court review to the four corners of the affidavit and any recorded testimony made part of the affidavit when determining probable cause and thus finds that the trial court could only review the sworn affidavit in determining whether the good-faith exception applied to these facts. I disagree. However, in determining whether the good-faith exception to the exclusionary rule applies, several Ohio appellate courts have held that a reviewing court may look beyond the four corners of the affidavit and consider unrecorded oral testimony to determine whether the officer executing the search warrant did so in good-faith reliance on the magistrate's issuance of the search warrant.
 
 State v. O'Connor
 
 , 12th Dist. No. CA2001-08-195,
 
 2002-Ohio-4122
 
 , ¶ 21,
 
 2002 WL 1832865
 
 .
 
 See also
 

 State v. Oprandi
 
 , 5th Dist. No. 07 CA 5,
 
 2008-Ohio-168
 
 , ¶ 45,
 
 2008 WL 170683
 
 ,
 
 appeal denied
 
 ,
 
 118 Ohio St.3d 1462
 
 ,
 
 2008-Ohio-2823
 
 ,
 
 888 N.E.2d 1114
 
 ;
 
 State v. Mays
 
 , 2d Dist. No. 23986,
 
 2011-Ohio-2684
 
 , ¶ 31,
 
 2011 WL 2176172
 
 ;
 
 State v. Landis
 
 , 12th Dist. No. CA2005-10-428,
 
 2006-Ohio-3538
 
 ,
 
 2006 WL 1880495
 
 .
 

 {¶ 47} The principle underlying these cases is the pronouncement in
 
 United States v. Leon
 
 ,
 
 468 U.S. 897
 
 ,
 
 104 S.Ct. 3405
 
 ,
 
 82 L.Ed.2d 677
 
 (1984), that " 'all of the circumstances' " may be considered in determining whether a reasonably well-trained police officer would have known that the search was illegal despite the magistrate's authorization.
 
 O'Connor
 
 at ¶ 22, quoting
 
 Leon
 
 at 922, fn. 23,
 
 104 S.Ct. 3405
 
 ;
 
 Oprandi
 
 at ¶ 45, quoting
 
 Leon
 
 at 922, fn. 23,
 
 104 S.Ct. 3405
 
 . Additional support for this position resides in the language of Crim.R. 41(C)(2), which expressly limits the scope of the recorded testimony requirement to the question whether "probable cause exists" and to "[t]he finding of probable cause." The Supreme Court of the United States released the
 
 Leon
 
 decision in 1984 and the Supreme Court of Ohio issued its decision in
 
 State v. George
 
 ,
 
 45 Ohio St.3d 325
 
 ,
 
 544 N.E.2d 640
 
 (1989), in 1989. Crim.R. 41 has been amended several times since the establishment of the good-faith exception to the exclusionary rule, but the recorded testimony requirement in the rule has never been extended beyond the determination of probable cause.
 
 [6]
 
 Nor has the Supreme
 Court of Ohio issued a decision prohibiting a trial court from considering unrecorded oral testimony in determining the applicability of the good-faith exception to the exclusionary rule.
 

 {¶ 48} The good-faith exception applies where the search warrant affidavit " 'contain[s] a minimally sufficient nexus between the illegal activity and the place to be searched' but [does] not contain sufficient information to establish probable cause."
 
 Dibble III
 
 at ¶ 20, quoting
 
 United States v. Carpenter
 
 ,
 
 360 F.3d 591
 
 , 596 (6th Cir.2004). The question for the court in such cases is " 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.' "
 
 United States v. Frazier
 
 ,
 
 423 F.3d 526
 
 , 536 (6th Cir.2005), quoting
 
 United States v. Weaver
 
 ,
 
 99 F.3d 1372
 
 , 1380 (6th Cir.1996). In the context of the good-faith exception, reasonably well-trained officers may infer a nexus between a place to be searched and items sought, even when the affidavit fails to establish probable cause.
 
 Carpenter
 
 at 596,.
 

 {¶ 49} In
 
 O'Connor
 
 , an individual repairing O'Connor's computer alerted authorities that the computer contained downloaded images of child pornography. Police then obtained a search warrant and seized the computer from the home of the repair person. Police subsequently obtained a second warrant to search O'Connor's residence for additional evidence relating to child pornography. As a result of the search, police discovered compact discs and floppy discs containing photographs depicting child pornography.
 

 {¶ 50} At the hearing on O'Connor's motion to suppress, the state presented the testimony of several witnesses, including the detective/affiant and the municipal court judge who issued the warrant. The testimony established that detectives informed the issuing judge that the computer came from O'Connor's residence and that O'Connor had, at one point in time, retrieved his hard drive from the repairmen's residence to copy files so as not to lose them during the reformatting process.
 

 {¶ 51} The trial court denied O'Connor's motion to suppress and O'Connor appealed. The Twelfth District Court of Appeals found the warrant was not supported by probable cause because the computer had been seized from the repairmen's home, and there was nothing in the affidavit to establish a nexus between appellant's home and further evidence of child pornography. However, when the Twelfth District reviewed the transcript of the suppression hearing, the court found that oral statements provided to the issuing judge supplied the necessary nexus between O'Connor's residence and the items to be seized.
 
 Id.
 
 at ¶ 19. The Twelfth District held that the good-faith exception to the exclusionary rule applied, and the trial court had not erred by denying the motion to suppress.
 
 Id.
 
 at ¶ 23.
 

 {¶ 52} In my view, the facts in this case are similar to those in
 
 O'Connor
 
 and require the same conclusion. Detective Wuertz is a 13-year veteran of the Upper Arlington Police Department. At the time of this investigation, his assignment included "juvenile crime, juvenile sex crimes, and narcotics investigations." (June 29, 2010 Tr. at 4.) Detective Wuertz testified at the suppression hearing that he told the municipal court judge, under oath, appellant had taken inappropriate photographs of both E.K. and E.S. in see-through unitards without undergarments. Though this information is not contained in Detective Wuertz's affidavit, such information was properly presented to and considered by the trial court and is sufficient to create a nexus between appellant's home and evidence of a crime against E.S. It is also sufficient to support a finding by the trial court that the officers who served the warrant,
 including Detective Wuertz, relied on a warrant based on an affidavit that contained a sufficient nexus between the illegal activity and the place to be searched. When the affidavit is supplemented by the unrecorded oral testimony of Detective Wuertz, there is no question that the affidavit contains the indicia of probable cause.
 

 {¶ 53} In
 
 Davis v. United States
 
 ,
 
 564 U.S. 229
 
 ,
 
 131 S.Ct. 2419
 
 ,
 
 180 L.Ed.2d 285
 
 (2011), the Supreme Court of the United States discussed the development of the good-faith exception to the exclusionary rule as follows:
 

 The basic insight of the
 
 Leon
 
 line of cases is that the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue.
 
 Herring
 
 [
 
 v. United States
 
 ,
 
 555 U.S. 135
 
 , 143 [
 
 129 S.Ct. 695
 
 ,
 
 172 L.Ed.2d 496
 
 ] (2009) ]. When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.
 

 Id.
 

 at 144
 
 [
 
 129 S.Ct. 695
 
 ] * * *. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful,
 
 Leon,
 
 supra
 

 , at 909 [
 
 104 S.Ct. 3405
 
 ] * * * (internal quotation marks omitted), or when their conduct involves only simple, "isolated" negligence,
 
 Herring,
 
 supra
 

 , at 137 [
 
 129 S.Ct. 695
 
 ] * * *, the " 'deterrence rationale loses much of its force,' " and exclusion cannot "pay its way."
 
 Leon,
 
 supra
 

 , at 919 [
 
 104 S.Ct. 3405
 
 ] * * * (quoting
 
 United States v. Peltier
 
 ,
 
 422 U.S. 531
 
 , 539,
 
 95 S.Ct. 2313
 
 ,
 
 45 L.Ed. 2d 374
 
 (1975) ).
 

 Id.
 
 at 238,
 
 131 S.Ct. 2419
 
 .
 

 {¶ 54} The Supreme Court in reversing this court in
 
 Dibble II
 
 expressly determined that Detective Wuertz did not "knowingly and intentionally includ[e] false information in his search-warrant affidavit."
 
 Id.
 
 at ¶ 25. In light of that decision, the only misconduct that can be attributed to Detective Wuertz in this case is a simple, isolated mistake in failing to include an averment in his affidavit that appellant had also taken photographs of E.S. in a see-through unitard without undergarments. The trial court stated, "based upon the evidence, any deficiencies within the affidavit are not so egregious that the executing officers could not reasonably presume the warrant was valid." (Aug. 16, 2016 Decision at 2.) I agree with the trial court. In my view, the relatively minor omission from the search warrant affidavit in this case does not justify the application of the exclusionary rule.
 

 {¶ 55} For the foregoing reasons, I agree with those appellate districts holding that a trial court, in ruling on a motion to suppress, may rely on oral unrecorded testimony provided to the issuing judge when making the determination whether the good-faith exception applies. The record supports the trial court's conclusion that the officers who conducted the search of appellant's residence, including Detective Wuertz, did not rely on a warrant based on an affidavit that was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."
 
 Leon
 
 at 923,
 
 104 S.Ct. 3405
 
 . Therefore, the trial court properly determined that the good-faith exception to the exclusionary rule applied and denied appellant's motion to suppress.
 
 [7]
 

 {¶ 56} Accordingly, I would overrule appellant's sole assignment of error and
 affirm the judgment of the trial court. Because the majority holds otherwise, I respectfully dissent.
 

 For purposes of this dissent, I shall refer to the decision of the Supreme Court of Ohio in this case as "
 
 Dibble II
 
 " (
 
 State v. Dibble
 
 ,
 
 133 Ohio St.3d 451
 
 ,
 
 2012-Ohio-4630
 
 ,
 
 979 N.E.2d 247
 
 ), this court's decision in the subsequent appeal as "
 
 Dibble III
 
 " (
 
 State v. Dibble
 
 , 10th Dist. No. 13AP-798,
 
 2014-Ohio-5754
 
 ,
 
 2014 WL 7462904
 
 ), and this court's decision on reconsideration as "
 
 Dibble IV
 
 " (
 
 State v. Dibble
 
 , 10th Dist. No. 13AP-798 (Mar. 3, 2016) (memorandum decision)).
 

 The majority cites evidence produced at a sentencing hearing in concluding that E.S. was 18 years of age when the sexual contact occurred. The affidavit identifies victim E.S. as a high school senior at the time the sexual contact occurred but does not state her age.
 

 I disagree with appellant's contention that the Supreme Court in
 
 Dibble II
 
 prohibited the trial court from considering information outside the four corners of the affidavit in determining whether the good-faith exception applied. Neither the Supreme Court in
 
 Dibble II
 
 nor this court in
 
 Dibble III
 
 provided any instruction to the trial court regarding the evidence that it should or should not consider in determining whether to apply the good-faith exception.
 
 Dibble IV
 
 at ¶ 11.
 

 The majority cites this court's decision in
 
 State v. Shepcaro
 
 ,
 
 45 Ohio App.2d 293
 
 ,
 
 344 N.E.2d 352
 
 (10th Dist.1975), for the proposition that Crim.R. 41(C)(2) prohibits a trial court from considering oral unrecorded testimony in ruling on the issue of probable cause and the applicability of the good-faith exception. However, this court decided
 
 Shepcaro
 
 in 1975, nine years before the Supreme Court of the United States created the good-faith exception and thirteen years before the Supreme Court of Ohio adopted the good-faith exception in
 
 George
 
 . Consequently,
 
 Shepcaro
 
 does not stand for the proposition that oral unrecorded testimony is inadmissible at a suppression hearing where the question is whether the good-faith exception applies.
 

 My ruling on this issue would render moot the state's argument regarding the constitutionality of Crim.R. 41(C)(2).